UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

TRACY JENKINS                                                                               PLAINTIFF

v.                                            CIVIL ACTION NO. 4:24-CV-P69-JHM

RYAN DILLION et al.                                                    DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Tracy Jenkins, a pretrial detainee proceeding *pro se*, initiated this civil rights action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, Plaintiff's claims will be dismissed.

**I. STATEMENT OF CLAIMS**

Plaintiff, a federal pretrial detainee at the Grayson County Detention Center (GCDC), sues U.S. Chief Marshal Ryan Dillion, GCDC Jailer Jason Woosley, "J2" Brian (or Bryan) Henderson, and "K1" David Gary in their individual and official capacities. According to the complaint, Defendants Woosley, Henderson, and Gary "all fall under the USMC Ryan Dillion."

Plaintiff alleges that he has constantly been subjected to "racist rhetoric" by staff and that he is "moved about the jail to accommodate white inmates." He also alleges that the staff and inmates "freely use the N word" to refer to him.

Plaintiff further alleges that he is made to sleep on the floor with state inmates, placed in units with no sprinkler system, placed in cells with black mold, and placed in isolation cells with cameras aimed at the toilets. He also alleges that there are no cameras in the "PC pods to manage and determine facts vs accusations;" there is no adequate law library or typewriter; he is unable to communicate with his lawyer "in confidence;" there is "discrimination for federal vs state

inmates;" he must eat cold food at all three meals; and he cannot freely practice his Muslim faith without restrictions. Finally, he alleges that he is "unable to transfer with personal property allowed in facility although feds are."

Plaintiff attaches copies of a number of exhibits. Where those exhibits pertain to Plaintiff's claims, the Court will discuss them below.

As relief, Plaintiff requests damages, a transfer, and the return of his personal property.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Defendant Dillion

Plaintiff's only allegation regarding Defendant Dillion is that, as the Chief U.S. Marshal, the other Defendants "fall under" him, which the Court understands to mean that Defendant Dillion has authority over them.

As a member of the U.S. Marshal's Service, Defendant Dillion is a federal employee. A *Bivens* claim is a judicially created counterpart to a 42 U.S.C. § 1983 civil rights action and is properly brought only against federal officials, who have allegedly denied a plaintiff's constitutional rights, in their individual capacities. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390-97 (1971); *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."). "The only remedy available under *Bivens* is money damages from an individual federal employee." *LeVay v. Morken*, 598 F. Supp. 3d 655, 663 (E.D. Mich. 2022).

Defendant Dillion is not, however, liable for the conduct of the GCDC officials. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. This Plaintiff has not done. Accordingly, Plaintiff fails to state a claim against Defendant Dillion.

**B. § 1983 claims**

The remainder of Plaintiff's claims involve actions by county, not federal employees, *i.e.*, GCDC staff. Under § 1983, "a plaintiff must allege (1) deprivation of a right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Here, Plaintiff does not attribute any of the alleged constitutional violations to any Defendant. If a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.

*See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *see also Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) ("Even a pro se prisoner must link his allegations to material facts and indicate what each defendant did to violate his rights.") (citations omitted).

"Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so, and leave to amend should be denied if the amendment would be futile."  *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)).  Here, leave to amend to ascribe specific actions to each Defendant would be futile because, as set forth below, none of Plaintiff's allegations state a § 1983 claim.

### 1. Racism

Plaintiff alleges that he has "constantly" been subjected to "racist rhetoric," that he is moved to accommodate white inmates, and that racial slurs are directed at him.

The Sixth Circuit has held that harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

As for Plaintiff's allegation that he was moved to accommodate white inmates, he attaches a grievance dated May 12, 2024, in which he grieved that he was the one moved for "being to[o] loud" while arguing over the TV remote with other inmates, who according to him, were racist.

The response to that grievance states that "[t]o prevent further issues and for your safety you was moved" to isolation "due to your history of keep separates," suggesting that he was not moved to "accommodate" white inmates. Regardless, a prisoner has no constitutional right or protected liberty interest to be housed in any particular facility or unit. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

The Court, therefore, holds that Plaintiff fails to state a claim based on alleged racist language or being moved to accommodate white inmates.

### *2. Conditions of confinement*

Plaintiff alleges that he, a federal detainee, must sleep on the floor with state inmates; that he has been placed in units with no sprinkler system and no cameras "to manage and determine facts vs accusations;" and that he has been placed in cells with black mold and in isolation cells with cameras aimed at the toilets. He also alleges that he is served cold food.

The Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees. *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). A Fourteenth Amendment conditions-of-confinement claim has two prongs. To satisfy the first objective prong, a plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong under the Fourteenth Amendment, a plaintiff must show that defendants acted "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836).

The Court need only address the first prong with regard to Plaintiff's claims. Contemporary standards of decency determine whether conditions of confinement meet this standard. *See, e.g.*, *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v.*

*Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Simply having to sleep on the floor does not violate the Constitution. *Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) (finding that forcing pretrial detainees to sleep on a mattress on the floor for three to seven months is not a constitutional violation); *Bartlett v. Woosley*, No. 4:22CV-P158-JHM, 2023 WL 4306911, at *3 (W.D. Ky. June 30, 2023) ("Plaintiff's allegation that he was housed in an overcrowded cell and required to sleep on the floor is not a deprivation of the minimal civilized measure of life's necessities.").

Plaintiff's complaint that because cells do not have cameras facts cannot be distinguished from accusations does not state a § 1983 claim. The Court is unaware of any federal law or constitutional provision requiring a prison to record prisoner's cells to provide a record for inmates, and Plaintiff points to none.

Plaintiff's allegation that he is housed without fire sprinklers similarly fails to state a constitutional claim. *See, e.g.*, *Deas v. Ingham Cnty. Jail*, No. 1:18-cv-838, 2018 WL 3853521, at *4 (W.D. Mich. Aug. 14, 2018) (dismissing claim alleging lack of sprinklers on initial review finding "[t]he presence of sprinklers in the cells and common areas might enhance safety in the jail; however, the absence of sprinklers does not make the jail inherently dangerous"); *Lyle v. Montgomery Cnty. Jail*, No. 3:15-CV-0480, 2015 WL 1954350, at *3 (M.D. Tenn. Apr. 28, 2015) (dismissing claim alleging lack of sprinklers and finding "their absence *per se* does not rise to the level of a constitutional violation"); *Mays v. Untig*, No. 08-CV-3379, 2010 WL 398901, at *3 (D.N.J. Jan. 26, 2010) ("The absence of sprinklers or fire drills, so long as the facility is in compliance with local fire code, does not amount to a viable claim.").

Plaintiff's bald allegation that black mold is present fails to state a claim because it does not allege a condition "intolerable for prison confinement." *Rhodes*, 452 U.S. at 348; *Lyons v. Wickersham*, No. 2:12-CV-14353, 2012 WL 6591581, at *4 (E.D. Mich. Dec. 18, 2012) ("The mere allegation of the presence of some mold does not create a condition intolerable for prison confinement.") (internal quotation omitted); *see also Juliot v. Osborne*, No. 4:14CV-P1, 2014 WL 4259429, at *4 (W.D. Ky. Aug. 27, 2014) (same).

Plaintiff's placement in a cell with convicted prisoners, as a pretrial detainee, also does not state a claim under § 1983. *See, e.g.*, *Sherman v. Washington Cnty. Det. Ctr.*, No. 2:16-CV-27, 2018 WL 1405279, at *3 (E.D. Tenn. Mar. 20, 2018) (and cases cited therein).

Nor does Plaintiff state an equal protection claim due to his status as a federal pretrial detainee. The Equal Protection clause prohibits discrimination by the government which either: (1) burdens a fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 788 (6th Cir. 2005). "[P]risoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). Further, placement of prisoners is a matter left to the discretion of state officials, and Plaintiff has no constitutional right or protected liberty interest to be housed in a particular facility or unit. *See Olim*, 461 U.S. at 245–46; *Montanye*, 427 U.S. at 242.

Plaintiff also does not state a claim related to having to use toilets visible to a camera because he does not allege that members of the opposite sex are able to view him using the toilet. *See Smith v. Long*, No. 3:18-CV-00061, 2018 WL 3831394, at *4-5 (M.D. Tenn. Aug. 13, 2018) (finding that prisoner's allegation that the jail had cameras in bathroom stalls failed to rise to the

level of a constitutional violation because plaintiff did not allege that females viewed the footage) (collecting cases).

Nor does Plaintiff state a constitutional claim because his food is cold. *See, e.g.*, *Kinner v. Moore*, No. 15-2105, 2016 WL 1421016, at *3 (W.D. Tenn. Apr. 8, 2016) (finding that inmate's allegations that "trays are dirty, food products are expired and outdated, meats and other food products are raw or undercooked, the food is cold and inedible, and the portions are inadequate" did not meet the objective standard for a conditions-of-confinement claim); *Adams v. Hardin Cnty. Det. Ctr.*, No. 3:16-CV-P29, 2016 WL 2858911, at *6 (W.D. Ky. May 16, 2016) ("Plaintiffs' allegations with regard to cold food and dirty trays fail to describe conditions sufficiently serious to rise to the level of a constitutional violation.").

Accordingly, the Court will dismiss Plaintiff's conditions-of-confinement claims for failure to state a claim upon which relief may be granted.

### 3. Access to library and typewriter

Plaintiff alleges that GCDC has neither an adequate law library nor a typewriter,

Prisoners do not have a right to a law library but do have a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a viable claim for denial of access to the courts, however, a prisoner must demonstrate he suffered "actual injury" because of particular actions of prison officials. *Lewis*, 518 U.S. at 351. Actual injury requires a showing that a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. at 356. "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Additionally, where, as here, "a defendant is represented by counsel in his criminal case, his constitutional right of access to the courts in that proceeding is satisfied as a matter of law." *Stephenson v. Cox*, No. 3:23-CV-00083, 2024 WL 389193, at *2 (E.D. Ky. Feb. 1, 2024) (citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)); *see also Cooper v. Shelby Cnty. Justice Ctr.*, No. 99-6365, 2000 WL 924604, at *2 (6th Cir. June 26, 2000) (same).

Plaintiff also does not state a § 1983 claim because no typewriter is provided since Plaintiff is not prevented from accessing the courts by filing handwritten documents. *Murphy v. Clendenion*, No. 1:23-CV-00013, 2023 WL 3065216, at *3 (M.D. Tenn. Apr. 24, 2023) ("[W]hile the Unit 6 law library does not provide Plaintiff with access to a computer or typewriter, courts do not require pro se litigants to submit typed or digitally formatted pleadings."). Indeed, here, Plaintiff successfully initiated this action by filing a handwritten complaint. Consequently, the Court will dismiss these claims.

### 4. Access to lawyer

Plaintiff also alleges that he is unable to communicate with his lawyer "in confidence." He attaches a grievance stating that he had a video zoom meeting at 2:00 p.m. on May 8, 2024, which he waited for until 2:15, at which time he was taken out of the room. Plaintiff states that he explained that it was important for him to talk to his attorney and asked the guard to email his attorney, which the guard refused to do. It appears from that document that Plaintiff contacted his attorney who told him that she was never logged in for the zoom meeting.

The response to the grievance states that Plaintiff was removed from the room "due to a no-show on your attorney's part," and "If you don't like zoom, ask your attorney to come in person." Thus, at most, Plaintiff alleges a one-time occasion in which a zoom visit with his attorney failed to materialize. It is apparent from the complaint that he was able to call his attorney,

9

and he does not allege that he was prevented from communicating with his attorney by phone, letters, or in person visits. As such, the Court will dismiss this claim for failure to state a claim. *See, e.g., Marlow v. Blount Cnty. Jail*, No. 3:21-CV-151, 2021 WL 2594793, at *5 (E.D. Tenn. June 24, 2021) (no § 1983 claim where plaintiff does not allege that his attorney could not arrange and initiate a confidential phone call, "or that he lacked other means, such as in-person visits, to communicate confidentially with his counsel).

### 5. *Religion*

Plaintiff alleges that he cannot practice his Muslim faith without restrictions. He attaches a January 18, 2024,[1] GCDC Resident Requisition in which he asked to "attend Friday's Islamic meeting at 12:00 pm." In response, Plaintiff was told that he was on the "waiting list because Friday service is full" and was given the January 2024 prayer schedule.

The First Amendment's Free Exercise Clause protects an inmate's pursuit of "sincerely held" religious beliefs and practices from infringement by prison authorities. *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019). "Nevertheless, these First Amendment rights may be subjected to reasonable restrictions and limitations attendant to the prison setting." *Cross v. Tell*, No. 3:23-CV-01051, 2024 WL 2868236, at *2 (M.D. Tenn. June 6, 2024) (citing *Bell v. Wolfish*, 441 U.S. 520, 549–51 (1979)). Thus, Plaintiff has no § 1983 claim to religious freedom with *no* restrictions.

Further, assuming that Plaintiff's sparse allegation in the complaint refers to his being placed on a wait list to worship at Friday service, he does not allege that participating in a Friday service is necessary for him to pursue a "sincerely held" religious practice or that a one-time occurrence of being placed on a wait list was a "substantial burden." *Cf. Living Water Church of*

---

[1] The Court notes that January 18, 2024, was a Thursday.

10

*God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (discussing that "a 'substantial burden' must place more than an inconvenience on religious exercise") (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004))); *see also Jones v. Kent Cnty. Corr. Facility*, No. 1:24-CV-764, 2024 WL 3770433, at *6 (W.D. Mich. Aug. 13, 2024) ("[A]s to Plaintiff's allegation that he was unable to attend Muslim services, Plaintiff fails to allege any facts about whether he is able to worship in his cell."). The Court will dismiss this claim for failure to state a claim.

### 6. Discrimination

Plaintiff alleges "discrimination for federal vs state inmates" and that he is "unable to transfer with personal property allowed in facility although feds are." These allegations are simply too vague and conclusory to state a claim. Regardless, as set forth above, Plaintiff cannot state an equal protection claim related to his treatment as a federal inmate as compared to a state inmate. *Jackson*, 411 F.3d at 619 (holding prisoners not "a suspect class for purposes of equal protection litigation.").

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this civil action.

Date: October 8, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.009